IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ANITA PARKER,**

    **Plaintiff,**

    v.                                    **CIVIL ACTION NO. 2:06cv468**

**THE SMITHFIELD PACKING CO., INC.,**

    **Defendant.**

*MEMORANDUM OPINION & ORDER*

This matter is before the Court on The Smithfield Packing Co., Inc.'s ("Defendant") motion for summary judgment. Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination. For the reasons below, Defendant's motion for summary judgment is **GRANTED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

For the purposes of this summary judgment motion, the Court assumes the following facts to be true.[1] Anita Parker ("Plaintiff"), an African-American female, began working for Defendant in 1998. Plaintiff was promoted several times, including a 2002 promotion to night shift

---

[1] Rule 56(B) of the Local Rules of the United States District Court for the Eastern District of Virginia requires that a motion for summary judgment include a list of undisputed facts. The Court assumes that any facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief.

supervisor for Defendant's bacon slicing operation at its Smithfield, Virginia facility. Plaintiff reported immediately to Lynette Schliefert, a white female. Schliefert's supervisor was Bryan Lennox, a black male, and Lennox's supervisor was Bill Lewis, a white male. Lewis was an assistant plant manager, and he reported to the plant manager, Donovan Ford, a black male.

Defendant's facility has two doors, the "front door" and the "side door." The doors are actually on the same side of the building and are separated by about three hundred feet. The side door is closer to the production area where most of Defendant's employees worked, including Plaintiff. The front door is only open from 6:00 a.m. to about 5:30 p.m., and a key is needed to enter or exit from the front door at other times. No key is ever needed to use the side door, which is manned by a security guard at all times and requires identification to enter. The adjacent parking lot is floodlit and under video surveillance. Whether or not an employee received a key to the front door was ultimately up to plant manager Ford's discretion.

In January 2005, Defendant hired April Humbles, a white female, as a supervisor on a level equivalent to Plaintiff. Humbles informed Plaintiff that she was expecting to receive a key to the front door of Defendant's facility. Humbles stated that Bill Lewis had informed her that she and Lynette Schliefert were not to use the side door. Plaintiff maintains that supervisors using the side door were subjected to threats by their subordinates in the vicinity of the side door and adjacent parking lot.

On February 8, 2005, Plaintiff requested a key to the front entrance from Lewis. Lewis ignored Plaintiff's request. Bryan Lennox was also present, and he indicated to Plaintiff that he would take care of the request. On February 10, 2005, Plaintiff approached Timothy Hogan, an assistant plant manager at the same level as Lewis, about the key request. Hogan informed

Plaintiff that supervisors were not supposed to have keys to the front entrance. Plaintiff told Hogan that she wanted to file a charge of race discrimination based on the fact that a white supervisor was to receive a key while she was not. On February 11, 2005, Plaintiff had a meeting with Lewis, Lennox, and Hogan. Lewis told Plaintiff that she would receive a key; however, Plaintiff never got a key to the front door. Plaintiff states that after this incident, Lewis began to harass Plaintiff by closely watching her work and questioning her in a very personal manner.

On February 18, 2005, Lynette Schliefert confronted Humbles about her paperwork in front of Plaintiff. Schliefert accused Humbles of "nigger-rigging" her paperwork. The next day, Plaintiff orally complained about the statement to Bryan Lennox. Lennox reported the incident to human resources. A human resources officer interviewed everyone involved, and Lennox issued a documented disciplinary oral warning to Schliefert. Lennox also reported Plaintiff's complaint to Bill Lewis. Plaintiff alleges that after this incident, Lewis initiated a plan to discharge Plaintiff.

Beginning in 2004, Defendant began addressing problems with employee paperwork. In the Spring of 2004, plant manager Donovan Ford met with all of the production supervisors to address falsification of paperwork. Ford states that cheating declined for a few months after this meeting, but then became a problem again in late 2004. Ford had another meeting with the supervisors in Fall 2004. Rita Walden and Kathy Crocker were told to investigate. Defendant maintains that the investigation was instigated by Dave Filson, a vice president and Ford's direct superior. Plaintiff states that Bill Lewis specifically instructed Walden to examine Plaintiff's paperwork.

The investigation revealed evidence of paperwork falsification in the bacon slicing department. Plaintiff, Curtis Hall, and Mack Nash, two other bacon slicing supervisors, were

suspended. Hall admitted to falsifying numbers and was fired. Plaintiff and Nash professed innocence. Nash was not terminated, while Plaintiff was terminated on April 20, 2005 for falsifying paperwork. Plant manager Donovan Ford's consent was required before Plaintiff could be fired.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin North Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.3d 924, 928 (4th Cir. 1992) (stating that "summary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law")). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### III. DISCUSSION

**A. Unlawful Discrimination Claim**

Plaintiff's complaint alleges unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2000) ("Title VII"), and 42 U.S.C. § 1981 (2000). Plaintiff alleges intentional discrimination on the basis of race as well as unlawful retaliation. Plaintiff's primary claim appears to be for unlawful retaliation; however, to the extent that Plaintiff's complaint alleges claims for discriminatory firing and a hostile work environment, the Court will address those issues. Title VII provides that, "It shall be an unlawful employment practice . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). Under Title VII, "the plaintiff bears the initial burden of proving a prima facie case of discrimination by raising an inference that the defendant acted with discriminatory intent." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998). Plaintiff can satisfy this burden with direct evidence of discriminatory intent or the *McDonnell Douglas* burden-shifting scheme. *Id.* at 1227-28. Under the *McDonnell Douglas* scheme, once Plaintiff establishes a prima facie case of racial discrimination, the burden then shifts to Defendant to provide a legitimate non-discriminatory reason for Plaintiff's dismissal. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The burden would then shift back to Plaintiff to show that Defendant's proffered legitimate reason is pretext for discrimination. *Id.* at 804.

Plaintiff has produced no direct evidence of discriminatory intent. Therefore, Plaintiff must proceed under the *McDonnell Douglas* scheme. In order to establish a prima facie case of

discriminatory firing under Title VII, Plaintiff must show that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] job and h[er] job performance was satisfactory; (3) [s]he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002).[2] Plaintiff is a member of a protected class and she was fired; however, Plaintiff fails to meet the other two requirements of the prima facie case. First, Plaintiff cannot show that her job performance was satisfactory. At his deposition, plant manager Donovan Ford stated that he had absolutely no doubt that after viewing the results of the investigation into falsified paperwork, Plaintiff should be terminated. In addition, Kathy Crocker stated at her deposition that she had no doubt after her investigation that Plaintiff was falsifying numbers. Plaintiff claims she is innocent, and presents the deposition testimony of Bryan Lennox that on one particular occasion, when shown some results of the paperwork investigation, none of Plaintiff's numbers were suspect. However, Lennox was subsequently out of the office for a few days, and also stated that he has actually not formed a definite conclusion about whether Plaintiff actually cheated. Other than her own statement that she is innocent, Plaintiff has produced no evidence that her job performance was satisfactory.

      Finally, Plaintiff has produced no evidence that any employees who are not members of the protected class were treated differently. The United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") has stated that, "the clear rule in this circuit [is] that Title VII plaintiffs must ordinarily show replacement outside the protected class." *Miles v. Dell, Inc.*, 429 F.3d 480, 487

---

[2] The elements of a prima facie case of employment discrimination are the same under Title VII and 42 U.S.C. § 1981. *Bryant*, 288 F.3d at 133 n.7.

(4th Cir. 2005). There are several exceptions to this rule, such as when the firing and replacement decisions are made by different decisionmakers, when the hiring of another person within the protected class is meant to disguise the discrimination, and when there is a significant period of time between the firing and replacement decisions. *Id.* at 486-89.

In the instant case, plant manager Donovan Ford ultimately made the decision to fire Plaintiff. Plaintiff argues that Ford was acting under the influence of Bill Lewis, who is the focus of Plaintiff's discrimination complaints. However, Lewis was involved in the decision to hire Plaintiff's replacement, a black female.[3] Although the hiring and replacement decisions were made by different people in this case, the target of Plaintiff's complaints, Lewis, was clearly involved in the decision to replace Plaintiff with someone inside Plaintiff's protected class. Furthermore, Plaintiff does not contend that the hiring of her replacement was a disguise for the alleged discrimination against her, and the evidence does not show that an inordinate period of time passed between Plaintiff's termination and the hiring of her successor. In summary, Plaintiff has failed to make a prima facie showing of discrimination.

Even if Plaintiff could make out a prima facie case, Plaintiff cannot demonstrate that Defendant's legitimate reason for terminating Plaintiff is pretext for discrimination. Defendant has produced the opinions of the plant manager and the paperwork investigator that Plaintiff falsified paperwork, and Plaintiff does not direct any charges of discrimination against either of these two individuals. Plaintiff has produced only her own opinion and the testimony of Bryan Lennox, who admits that he does not know whether Plaintiff actually cheated or not. Plaintiff's claim of

---

[3] The decision to hire Plaintiff's replacement also involved Carey McKeithan. Plaintiff makes no allegations towards McKeithan. Moreover, Ford stated that Lewis would know why Plaintiff's particular replacement was chosen.

discriminatory firing fails.

**B.  Hostile Work Environment Claim**

To the extent Plaintiff makes a claim for a hostile work environment, it too must fail.  A hostile work environment is one that is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' . . . ."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  Courts determine whether an environment is hostile or abusive by looking at all the circumstances.  *Id.* at 23.  These can include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  "[H]ostile work environments generally result only after an accumulation of discrete instances of harassment."  *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006).

Plaintiff's complaint centers around two incidents.  The first of these is Plaintiff's assertion that she was refused a key to the front door of Defendant's facility while a white coworker with an equal level of responsibility was given a key.  Plaintiff complains that this amounts to a policy of segregation and cites *Brown v. Board of Educ.*, 347 U.S. 483 (1954).  Plaintiff states that she believed that Bill Lewis was implementing a policy of segregation because April Humbles, a white female, told Plaintiff that Lewis wanted Humbles to have a key.  In fact, Plaintiff admits that she does not know who had authority to issue a key, and that her charge against Lewis is based on Plaintiff's observations of Lewis ordering a key.  However, plant manager Donovan Ford, who is black, had the sole authority to issue keys.  Furthermore, Defendant's uncontested evidence shows

that as of April 17, 2005, of the 22 production supervisors (Plaintiff's position) who had keys to the front door, 15 of them were black. Plaintiff was never directly denied a key; it simply appears as if her request was forgotten and Plaintiff never followed up on its status. The evidence clearly does not support Plaintiff's complaint of a hostile work environment based on Defendant's key policy.

Plaintiff's second complaint is over an offensive comment made by Lynette Schliefert, Plaintiff's immediate supervisor. On February 18, 2005, while Plaintiff was present, Schliefert accused April Humbles of "nigger-rigging" her paperwork. After she made the comment, Schliefert turned to Plaintiff and apologized. Plaintiff complained to Bryan Lennox about the statement the next day. Lennox reported the incident to Defendant's human resources department, and also mentioned it to Bill Lewis. Evonne McCabe, Defendant's human resources manager, interviewed the witnesses to the incident. Schliefert admitted she made the comment and was given a documented verbal warning.

Although offensive and entirely unacceptable, one comment alone cannot support a hostile work environment claim. In *Jordan*, the plaintiff's complaint centered around one racist remark from a coworker that was directed at a television set. *Jordan*, 458 F.3d at 339-40. The Fourth Circuit held that this one remark did not create a hostile work environment. *Id.* at 340. In support of its holding, the Fourth Circuit noted that this was "a singular and isolated exclamation" that was not repeated and that it was "a far cry from alleging an environment of crude and racist conditions so severe or pervasive that they altered the conditions of [the plaintiff's] employment . . . ." *Id.*

In the instant case, as in *Jordan*, Plaintiff only points toward one comment with no allegations of repetition. In addition, the comment in the instant case was not directed personally

at Plaintiff, but instead toward a white coworker. While none of these factors excuse the conduct at issue, "The complaint does not describe a workplace permeated by racism, by threats of violence, by improper interference with work, or by conduct resulting in psychological harm." *Id.* Like the key request incident, this incident also cannot support Plaintiff's hostile work environment claim. Examining all the circumstances, Plaintiff's claim that a hostile work environment existed at Defendant's facility is not supported by the evidence.

**C. Retaliation Claim**

The primary focus of Plaintiff's complaint is a claim for unlawful retaliation. Title VII states that, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The standard for an unlawful retaliation claim under Title VII is the same as under 42 U.S.C. § 1981. *Jordan*, 458 F.3d at 343-44. Plaintiff claims that Defendant unlawfully retaliated against her by terminating her after her complaints about the key incident and Schliefert's comment. Plaintiff carries the initial burden of establishing a prima facie case under Title VII by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).

In order to establish a prima facie case of unlawful retaliation, an employee must show: "(1) that [s]he engaged in a protected activity; (2) that [her] employer took an adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). An adverse employment action includes "any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." *Id.*

An employer can defend itself by producing "evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001).

Plaintiff has put forward two potential protected activities. Plaintiff's first proffered protected activity involves her complaints regarding her failure to receive a key to the front door. Plaintiff's second potential protected activity involves her complaint over Schliefert's inappropriate comment to Humbles. Defendant argues that Plaintiff is barred from using these incidents as a basis for her claim because she never filed a formal discrimination complaint pursuant to Defendant's corporate policy.

Protected activities include "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. An employee is not required to "engage in the formal process of adjudicating a discrimination claim." *Id.*; *see also Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers *or* using an employer's grievance procedures." (emphasis added)). When deciding whether an employee has engaged in a protected opposition activity, the Court must balance Title VII's purpose in protecting employees who complain about discrimination against Congress' desire not to interfere with employers' objective control over their employees. *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999).

Defendant cites *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) for the argument that Plaintiff's failure to file a written

11

complaint over either of her two primary incidents using Defendant's formal procedures forecloses her claims of discrimination and harassment. *Faragher* and *Ellerth*, however, do not address the issue at hand, that is, whether an informal complaint can qualify as a protected activity. Instead, *Faragher* and *Ellerth* establish an affirmative defense for claims based on a hostile environment created by a supervisor. *Faragher*, 524 U.S. at 807. The elements of the defense are: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*[4] In the instant case, the issue is not whether Defendant has an affirmative defense to a hostile environment claim, but merely whether Plaintiff can make out a prima facie case of retaliation. Indeed, the Court did not need to reach the *Faragher-Ellerth* defense when examining Plaintiff's hostile environment claim, because as discussed above, Plaintiff clearly lacked evidentiary support for a hostile environment.

Although it is true in the instant case that Plaintiff never utilized the formal written complaint mechanism provided by Defendant, Plaintiff nonetheless personally brought both the key issue and the racist comment issue to the attention of management. Plaintiff discussed the key issue at a meeting with Bryan Lennox, Tim Hogan, and Bill Lewis. Plaintiff discussed the comment issue with Bryan Lennox, who brought it to the attention of Defendant's human resources

---

[4] The Court also notes that although other circuits have applied the *Faragher-Ellerth* defense to a race-based hostile environment claim, the Fourth Circuit has never expressly done so. *See, e.g.*, *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 411-12 (6th Cir. 1999); *see also Serrano v. Best Roofing Tech., Inc.*, 40 Fed. App'x 806, 806-07 (4th Cir. 2002) (per curiam) (applying the *Faragher-Ellerth* defense to a race-based hostile work environment claim). As the instant Plaintiff has failed to make out a prima facie case of a hostile work environment, the Court does not need to reach the issue.

department as well as Bill Lewis. Defendant's human resources department then interviewed the witnesses and Lennox gave a documented verbal warning. Plaintiff's evidence shows that Bill Lewis, the chief target of Plaintiff's discrimination complaints, was aware of both of Plaintiff's protected activities. Plaintiff's direct complaints of race discrimination to upper management satisfy Plaintiff's reporting burden in the unlawful retaliation context.

An employee's opposition activity is only protected, however, if the employee was opposed to actually unlawful activity or, if there was no actual violation, if employee reasonably believed that the employment practice she is opposing is unlawful. *Jordan*, 458 F.3d at 338-39. As discussed above, Plaintiff cannot show an actual hostile work environment. Therefore, the next question is whether Plaintiff reasonably believed that she was opposing an unlawful situation. *Jordan*, 458 F.3d at 340. The standard for determining whether such a belief is reasonable is objective and may be determined as a matter of law. *Id.* at 339; *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406-07 (4th Cir. 2005). In the instant case, Plaintiff could not have reasonably believed that she was opposing unlawful activity when she complained about the key incident. As discussed above, more black employees at Plaintiff's level had keys than white employees. Plaintiff was never directly denied her request for a key. The fact that Bill Lewis authorized keys for two of Plaintiff's white coworkers does not, without more, suggest a discriminatory motive. The evidence reflects that Plaintiff's key request went unfulfilled simply because of an oversight.

Likewise, Plaintiff could not have reasonably believed that Lynette Schliefert's offensive comment created an unlawful environment in violation of Title VII. As discussed above, the comment was not directed at Plaintiff and not repeated. Moreover, the Fourth Circuit held in

*Jordan* that a court "cannot simply *assume*, without more, that the opposed conduct will continue or will be repeated unabated . . . ." *Jordan*, 458 F.3d at 341. The Court cannot infer that Schliefert's single comment would lead to a hostile environment. In conclusion, Plaintiff fails to make a prima facie case of retaliation because she cannot show that she engaged in a protected activity.

Even assuming that Plaintiff's proffered activities are protected, Plaintiff nonetheless fails to establish a prima facie case for retaliation because she cannot show a causal connection between her asserted activities and her termination. In order to prove causation, "the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998). If the employer is unaware of the protected activity, there can be no causation. *Id.* Furthermore, when the target of a plaintiff's complaints is a subordinate employee, the plaintiff must demonstrate that the subordinate employee was actually principally responsible for the adverse decision. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004). To be sure, "Title VII . . . do[es] not limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employer." *Id.* at 290. However, "a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision" is not a decisionmaker for Title VII purposes "simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." *Id.* at 291.

In the instant case, plant manager Donovan Ford made the decision to terminate Plaintiff. Plaintiff argues that Ford was merely rubber-stamping Bill Lewis' decision that Plaintiff had to be

fired. Plaintiff's evidence does show that Lewis was particularly involved in the investigation into Plaintiff's paperwork and that he was present in meetings with Ford where the results of the investigation were discussed. However, the evidence also shows that Ford personally reviewed the paperwork that lead to Plaintiff's termination. The fact that at his deposition Ford could not specifically identify which paperwork he reviewed two years ago is not relevant, because the point is that Ford had an independent basis for terminating Plaintiff apart from Bill Lewis' opinion. This is buttressed by the fact that Kathy Crocker, who performed most of the investigation into Plaintiff's paperwork, presented her findings to Ford without going through Lewis. Indeed, during her investigation Crocker was working under Dave Filson, a vice president and Ford's direct superior. Crocker testified at her deposition that Bill Lewis had nothing to do with her investigation. Plaintiff has not produced evidence that Lewis substantially influenced Ford's decision, much less that he was principally responsible as the *Hill* standard requires. Plaintiff has not met the causal connection requirement of a retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**.

Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED**.

                                                            _____/s/_____
                                                            Raymond A. Jackson
                                                            UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 26, 2007